## BENEDICT, HALL & CO. v. FLANIGAN.

1. Comparison, as an original means of ascertaining the genuineness of hand-writing, will not be permitted; but when introduced in aid of doubtful proof, already offered, it may be allowed.
2. Whether the proof is doubtful must be determined, in the first instance, by the trial judge, and his ruling will not be disturbed unless his error be very patent. The direct proof in this case was properly held by the Circuit judge to be doubtful.
3. The rule established in this State does not require the witnesses making the comparison to be professional experts in the matter of handwriting.

Before WALLACE, J., Richland, April, 1882.

This was an action by Benedict, Hall & Co. against J. T. Flanigan and others, commenced in March, 1873. Mrs. L. M. Flanigan, one of the defendants, denied her alleged signature, judgment by default being taken against the other defendants. H. R. Flanigan, one of the defendants, and a son of L. M. Flanigan, was called as a witness by plaintiffs, and testified as stated in the opinion. Plaintiffs then called J. H. Sawyer and C. J. Iredell, bank cashiers, and R. S. Desportes, a merchant of long standing, and "a banker in a small way," who testified that from a comparison of the signature to the note with two admitted signatures of L. M. Flanigan, they thought the signature was genuine. This testimony was objected to by the defendant. The judge charged the jury that the only issue before them was the genuineness of L. M. Flanigan's signatures to the three notes. That they, the jury, were to make the comparison of the papers themselves, as well as to consider the testimony of the witnesses who have been examined as experts, and the other testimony in the case; that as we had no professional experts in this State, persons who had experience in the comparison of signatures to notes were competent to testify to the genuineness of signatures in controversy, by comparison with signatures proven to be genuine, and that their testimony was entitled to weight according to their experience and skill in making such

·comparisons; that cashiers of banks, who, in the discharge of ·duty, had frequent occasion to examine signatures to notes and determine their genuineness, were competent to testify to the ;genuineness of signatures in controversy by comparison with signatures proven to be genuine, and that their testimony was entitled to weight according to their experience and skill in making ·such comparisons.

The jury found a verdict for plaintiffs against L. M. Flani-;gan for $3,673.97.   Defendant appealed.

*Mr. J. H. Rion,* for appellant.

*Messrs. Melton, Clark & Muller,* contra.

February 15th, 1883.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The exceptions in this case, six in number, though presented in different forms, raise at last but a single question for the consideration of this court, to wit: The question of the competency of the opinion of a witness not .a professional expert, as to the genuineness of a signature, derived entirely from comparison—the witness being wholly unacquainted with the handwriting of the party.

The most direct and satisfactory proof of the genuineness of a writing is the testimony of one who was present and saw the writing executed; but this is not always possible, hence the testimony of those who are acquainted with the writing of the party in question, either from having seen him write or otherwise familiar with his acknowledged writing, has invariably been allowed.   From a knowledge thus acquired, the witness is supposed to have a standard in his mind, impressed by his memory, with which he can compare the disputed writing and thus reach a correct conclusion.   This being the theory upon which such testimony has been uniformly received it is somewhat illogical that comparison on the witness stand of a disputed signature with one acknowledged to be genuine has been as uniformly rejected by most of the courts.

The basis of the first class of testimony being nothing more

than a comparison with a standard resting in memory, it would seem that the latter class would be more reliable, resting, as it does, upon a comparison with an acknowledged standard present and in juxtaposition with the disputed writing, especially where the comparison proposed is generally to be made by witnesses of intelligence and familiar with chirography. But, nevertheless, while testimony of the character first above referred to has never been questioned, yet testimony of the latter character has generally been excluded. In England, until the Statute of 28 and 29 Victoria, ch. 18, § 8, the weight of authority was against such testimony. That statute, however, authorized a comparison by the jury and witnesses of a disputed writing with one proved to the satisfaction of the judge to be genuine, and such has been the ruling doctrine in England since. In the American States, the authorities have differed, some holding to the common law decisions and others following the Statute of Victoria.

In our State a medium line has been adopted by our court of last resort. It has been generally accepted here that comparison as an original means of ascertaining the genuineness of handwriting will not be permitted, but when introduced in aid of doubtful proof already offered it may be allowed. We have three decisions upon this subject, from which the rule as just stated may be fairly deduced. The cases of *Boman* v. *Plunkett*, 2 *McC.* 518; *Bird* v. *Millar*, 1 *McM.* 125, and *Bennett* v. *Mathewes*, 5 *S. C.* 478. In the first of these cases a comparison by jury was permitted in aid of doubtful proof. In the second it was permitted to be made by a witness, and the papers were also submitted to the jury, and Judge Evans, in delivering the opinion of the court, said: " Admitting the principle to be correct, that such testimony is inadmissible in the first instance, yet in a case of conflicting evidence this kind of evidence was admitted in the case of *Plunkett* ads. *Boman*, not as original, but as confirmatory evidence, to enable the jury to decide upon which of the witnesses they could most confide. In a practice of many years I have not known the admissibility of this kind of evidence for the purpose stated, questioned."

In the last case, upon the authority of the two first, similar testimony was admitted, the comparison being made by the

witnesses in the presence of the court in aid of doubtful proof, and in that case the witnesses were not professional experts, one of them being nothing more than a book-keeper in a bank, and the other a notary public.    Without discussing further the authorities in other States, we may say that it has been settled with us that such testimony is competent when offered not as original evidence, but in aid of doubtful original proof, or when it is conflicting.    Nor does it seem necessary that the compari-, son shall be made by professional experts alone; others will be permitted, the value of the comparison depending in each case upon the intelligence, skill and experience of the witness in such matters.

But the question arises, Who is to determine when the evidence is so doubtful or conflicting as to admit this supplemental testimony?    The presiding judge must, of course, determine this in the first instance.    The witnesses are in his presence, and the whole matter is before him, and he must at first decide whether the case is of a character to authorize such testimony. His decision is subject to review by this court, as it is not a question entirely of discretion with him, but the case should be a very strong one and the error of the judge very patent, to warrant this court to overrule this judgment.    He is more directly in contact with the question, and with all of its surroundings. The witnesses are examined in his presence, and their manner and bearing subject to his observation, and he is the better able to determine the effect of the testimony.    His opinion, therefore, is and should be entitled to much weight.

But, independent of this, we think the facts below sustained the ruling of Judge Wallace.    Only one witness was examined directly as to the signature of the defendant, a son of the defendant.    He testified in chief that he had seen his mother write, and in his opinion the signatures to the notes were not hers; but he afterwards stated that he would take the signatures to be his mother's without comparing them with the other acknowledged signatures presented to him, to wit, her signature to a guano note and the affidavit on the original answer, but upon comparing them he would deny the signatures on the notes sued on to be hers.    This certainly raised a doubt as to the reliability of

his testimony. Under such circumstances we think a case was made for the introduction of supplementary testimony. Judge Wallace, in admitting this evidence, properly limited its force and effect by stating that it was entitled to such weight only as the experience and skill of the witnesses making the comparison might demand.

As has already been stated, the rule in this State, as established and illustrated in these cases above referred to, does not seem to require that the witnesses making the comparison shall be professional experts. In *Bennett* v. *Mathewes, supra,* they have no higher qualifications in that respect than the witnesses in this case, and yet they were admitted there, and no question was raised as to that in *Bird* v. *Millar.* It is true such testimony, as all testimony founded upon opinion merely, is weak and uncertain, and should in every case be weighed with great caution ; but the force and effect of such testimony is not before us— we are concerned only with its competency—and we think in this case that Judge Wallace followed the leading of the three cases cited from our own books, and, therefore, his ruling must be sustained.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.